Next case on the calendar, United States v. Kilpatrick. May it please the court, good morning. My name is Stacey Van Malden and I'm here this morning to argue on behalf of Tavon Kilpatrick. Now, I can't stand here under the weight of all the authority in every circuit, which it would be disingenuous to argue. I didn't do that, did I? No, I did. Okay, that the application of the sentencing guidelines in using 2E1.1 in a RICO conspiracy is improper. What I can argue today, very, very briefly, is simply that there is persuasive authority that, how many that's, the sentencing provision is not mandatory but rather permissive. There is authority in other circuits that there's no must, although treat is pretty strong, but there is authority that it is permissive. And there is no indication that the sentencing court recognized that he had the power to sentence or to count as criminal, as relevant conduct and part of the offense of conviction under 4A1.1, the crimes that he used to calculate criminal history. Could you just rather explain why application note 4 is not really a pretty straightforward exception to 4A1 to A1? I can't explain. It's an exception because RICO is different. It's not just the underlying crimes. It is different. But I'm not saying it's not different. What I'm saying is that it's permissive and not mandatory, that when a court is calculating a guidelines calculation as they must procedurally, that a court should be able to choose whether they can use 2E1.1 or they can use 4A1.1. I hope I got that right. And essentially, this court and the sentencing court used it as though it were mandatory. And because of that, I would argue to you today that it was an abusive discretion to sentence this teenager, although the crimes he committed were harsh, but it's a teenager to seven additional years in federal prison. That's his college. That's what he's going to learn. And that was unreasonable. It was plain error. And for that reason, I would most respectfully request, in the best way, that this court remand the case for resentencing. And I thank you. Thank you. May it please the Court, my name is Andrew Freifeld, and I represent Tevin Mizell on this appeal. Mizell bargained for the right to argue that the rule enhancement rendered the plea agreement's stipulated guidelines range overstated for purposes of the 353A factors. Indeed, as shown by his sentencing memoranda and his arguments at sentencing, Mizell's ability to make this argument is the primary reason he entered into the plea agreement. And as shown by Judge Sullivan's findings at sentencing, this was one winning argument. Not only did His Honor believe that the rule enhancement rendered the stipulated range overstated, but the court flat out rejected the applicability of the rule enhancement at all. Had the government not sua sponte breached the agreement by arguing for a higher criminal history category, then Mizell's guidelines range would have been 81 to 87 months. In Puckett v. United States at footnote 4, the Supreme Court held that to satisfy the third prong of plain error analysis, that is, to show prejudice, a defendant must prove that the breach affected her sentence. We maintain that Mizell satisfied this burden by showing that Judge Sullivan imposed a sentence based on a guidelines range that was considerably higher than the one that would have been found. Sullivan asked a question about the application note, didn't he? And is the government not supposed to answer that question? No, but the government had already breached the sentencing memoranda, which they filed before the hearing. So the breach was there. Hadn't Sullivan raised the same issue with a number of other defendants that are involved in the same conspiracy? I have no idea. I didn't review the records of other defendants, and I don't think that. You didn't review them before you came here? You didn't think anybody would ask you? Pardon? You didn't think anyone would ask you? Well, it occurred to me. You prefer not to know. I'll concede the fact. I'll concede the fact then. No, it's not that I prefer not to know. You do know, don't you? You do know, don't you? I'll concede it. Yes, I'm confident. No, please. You know, once in a while, being cute like that doesn't help you any. Okay. I'll be straightforward with you. Do you know it or don't you? I don't. I didn't read it, but I trust the government told the truth in their brief. Go ahead. I did not read it. Go ahead. Okay. In any event, Your Honor, according to the plea agreement, the inquiries only arise why you would just rely on what the government said rather than look it up yourself, just to verify, because it would be part of your case. I don't think it's part of my case. That's why, as I'm about to assert. According to the plea agreement, only where inquiries regarding Mizell's criminal history category apply does it open the door for the government to make the argument. It doesn't say in other cases where Judge Sullivan makes inquiries. The fact that it seems to me that the fact that this was a related defendant or a co-defendant is really irrelevant to the analysis. Perhaps the government had appeared before Judge Sullivan on a completely different case. So what should the government have done? I mean, they say that they had been before the same judge with respect to co-defendants, and the error in calculation had been previously raised. And do you think they just should have ignored that in their sentencing memorandum? Absolutely. Absolutely. That was their promise. That was their promise, and that's the promise that Mizell relied on.  Yes, that's correct. I don't believe that they had such a duty of candor. So, in other words, because the duty of candor applies equally to both sides, does that mean that if the government's reasoning is to be adopted, if under the duty of candor, if defense counsel had discovered this quote-unquote error, he would have had the same obligation, presumably, of duty of candor to the court to disclose that there was a mistake and that my client's criminal history category is higher. I don't think that that's such a duty. I don't believe that defense counsel has such a duty. But that duty may be trumped by the fact of the agreement. That is exactly what I'm saying. Yes. Let's just assume, arguendo, that there was a breach. You still have to satisfy the third prong of the plain error test, right? Yes, I do. And so we know that at sentencing, at Mizell's sentencing, that Judge Sullivan, as Judge Wessey pointed out, sort of raised the issue. Sentencing was not taking place in a vacuum, he said. That's what he said. Yes, he did. But that he was familiar with the case and he was familiar with the case and Mizell's co-defendant. Article Application Note 4 was raised during several of these sentences, including one during which the district court brought up 2E1.1. And then in addition, the district court, sua sponte, deviated from the plea agreement stipulated criminal history by adding some points. So why doesn't this sua sponte attentiveness of the district court suggest that he would have calculated the criminal history category in the way that he did, regardless of the breach? I acknowledge that is possible, but this court would not know that without reviewing matters that are dehore the instant record. And since this record, I argue, should be limited by its four corners and other cases should not be added, while it's true, you can conclude that Judge Sullivan would have done this no matter what. What I'm saying to you is this. I want to grant you, just for the sake of argument, because I'm still thinking this through, that there may have been a breach. But under plain error, right? And given what the district judge, Judge Sullivan, said, don't you have a high hurdle to overcome with respect to showing prejudice? You mean what Judge Sullivan said in the instant case or what Judge Sullivan said in a different case? What he said at Mizell's sentencing, he said that the sentencing was not taking place in a vacuum, but that he was familiar with the case in Mizell's co-defendants. Okay. So he was familiar, right, with the application note. And he wanted to, and he brings it up. Again, I submit that the only way that, first of all, the government breached in their sentencing memorandum, not in the first instance. So without referring to other cases and other records, this court can conclude that Judge Sullivan drew that conclusion based on reading the government's sentencing memorandum. There's nothing in the record to suggest that the government That's not what he said. Judge Cassman was reading to you what Judge Sullivan said. And Judge Sullivan said that based upon other defendants, he was familiar with this, he'd seen this in other defendants from the same RICO conspiracy, and he'd made these rulings. I don't know. This record clearly reflects that that was in Judge Sullivan's mind. Okay. I respectfully disagree. While Judge Sullivan definitely said I'm familiar with this case and I presided over co-defendants, at no point did he say that this issue has been before me as to criminal history category, that that particular issue has been before me before and I'm deciding it accordingly. The record is just as reasonable that it was the government's sentencing memorandum which brought the issue to his attention. Thank you. I reserve two minutes, please. Thank you. May it please the Court, Joshua Naftalis from the Southern District of New York. I represent the United States on this appeal. The Court should affirm the judgments of both appellants, Tevin Mizell and Tavon Kilpatrick. With respect to Mr. Mizell, his appeal should be dismissed because he waived his right to appeal and the government did not breach the plea agreement. And as Judge Katzen pointed out, even if the government did breach the plea agreement, Mr. Mizell has identified no error in his sentencing. Did the district court make any inquiries of the government specifically about Mizell before the government filed its July 1, 2015 letter? With respect to Mr. Mizell, no. But as the panel has recognized, this issue was squarely before all the defendants who were obviously getting the ECF bounces. And in fact, the government had met with counsel for defendants to point out that Judge Sullivan had raised the issue about the application note and that it made no sense for the government to hide and put its head in the sand. The court had obviously made decisions in five prior defendants. It was the law of the case. For the government to sort of ignore it puts the government in the position of being... of basically lying to the court and ignoring what goes before. And as Your Honors know, the district courts in multi-defendant cases always take into account the other sentencings that have taken place. They do not take place in a vacuum. But we've seen other cases in which... I mean, the government's held to a very high standard on plea agreements and abiding by the agreements they have made. And, you know, with meticulous attention, I think, is some of the language that's been used. And why wouldn't it have been appropriate to say something that appears to be less advocacy than was included in the sentencing memo? Something to the effect that, you know, the government has made a plea agreement and this is what the calculation was. Something totally neutral and not pointing it out. And then the government actually is inquired of by the court and you respond. Didn't the government really volunteer that this error had been made and pointed out in a way that could be construed as advocacy? I don't think it was advocacy, Your Honor. And we're not conceding it was necessarily error. The exception to 4A1.2 is very complicated. RICO, obviously, it has a different way of calculating the guidelines. And just to back up, this was a, I think, more than a dozen defendants entered into similar plea agreements with the government. Not one defendant said, you're missing the application note. Everybody thought we had gotten it right and everyone was acting in good faith. Judge Sullivan raised the issue at one of the early sentencings and all of the parties went back and said, Judge Sullivan obviously has a different reading than the government. And just to point out, Mr. Kilpatrick and Mr. Mizell disagree as to how this application note should be applied. So it's not as though the government somehow misled the defendant as is being argued. And the government does have a duty of candor and we pointed out in multiple occasions in our sentencing submission that we were raising the issue in response to what the court had raised. Sorry, the court had raised this issue in what context? In the sentencing of the fired defendants. So in other proceedings. Correct. And we said we are standing by the guidelines calculation, which really is the core of what the plea agreement has. The core of the plea agreement, which is the defendant is bargaining. Your adversary argues that we should just look at the proceedings with regard to Mr. Mizell in kind of the four corners and not look outside those to the other defendants. Why is he wrong? Well, he's wrong because that's not how sentencing works. I believe there was a case, Your Honor, was on the panel in the Morales case earlier this term with Judge Lynch. And Judge Lynch and Your Honor were asking a similar question. And Judge Lynch said something effective. That's just not how it works. District Court judges, of course, take into account what happens with other defendants. And the government can't blindly say the plea agreement says X and we're ignoring what's taking place in the case overall. How is the defense counsel supposed to be aware? Well, it's one thing for an appellate counsel to say, I didn't look at the docket. But defense counsel is in the case reading the ECFs. And I personally met with defense counsel in these cases. I had taken over the case for sentencing, part of it, and said, this is the issue. And I said, I am bringing this up. Defense counsel never said, whoa, breach. And during the sentencing, Judge Sullivan said, does anyone disagree with my calculation? And defense counsel said, no. Defense counsel did not say breach. So we do not think it's a fair argument to say it did not come up. In fact, this is exactly what the government is supposed to do. This is basically what you're suggesting, really, is a change in the government's legal position, right, as to the application of the guidelines. There's no presentation of new facts or information. We are answering... Yes, this is how the court is applying it. The government had a view, which we thought was correct at the time. Judge Sullivan had said at an early sentencing and then at subsequent sentencing, I don't agree. And the government should not be put in the position of getting up, and Judge Sullivan says, go back. Why are you again making the wrong argument? We're coming back again, because that's... Do you have a right to disagree with Judge Sullivan? Why don't you stick to your guns? Maybe you are right. I don't understand. You negotiate a deal, and whatever you did or didn't do with defense counsel... I mean, if we allow this, then you can know that the judge is not going to buy your interpretation of the application note. You could sweet-talk a defendant into a deal, and then when the judge says, you know, I disagree with you about that, and you've always known that, you just say, well, Judge, you have to do what you have to do. I mean, I don't get it. Why didn't you just say to the judge, look, Judge, we know you've made that ruling. We've taken the position with regard to the negotiation of this, and now make your ruling. Why do you have to please the judge? What is this? Is that your job at the U.S. Attorney's Office to please the district court judges? Your Honor, it's not about pleasing the district court judge. Why didn't you stick to what you believe? Did Sullivan somehow convince you you were wrong? As I said, this is a difficult guideline. Both appellants... Well, I understand it's a difficult guideline, but you didn't answer my question. Did Sullivan convince you you were wrong? Sullivan convinced us that it was a reasonable interpretation. This circuit... Sullivan convinced you that he wasn't going to buy your argument because he ruled the other way. That's what he did. Right, and the government, I mean, the government in standing up before the district... Why didn't you just get up and say, look, this is how we calculated it. This is how we calculated it, Judge. We understand you've ruled the other way a couple times. You'll have to make the decision yourself because ultimately the plea agreement says that that's your decision anyhow. I mean, that is what we did. We said that... No, you told him that your calculation was in error. Didn't you? Our job is to tell the district court after an issue has been raised how to do it right. Your Honor, I said... So you adopted Sullivan's position. No, our job is to point out how there was the plea agreement and then after he's raised an issue, our job is to make sure the district court calculates it right so when it comes up on appeal, there isn't an issue where this court is reviewing incorrectly calculated guidelines. Now, I recognize that the defendant thought it was going to be calculated one way and we agreed with it, but once the district court makes a ruling, we're stuck. We can't keep going back over and over. Judge Sullivan was firm on this, that it was his view. We went back and looked at it and in the end, as Judge Katzen pointed out... So you did agree that it was right? We agreed it was a reasonable interpretation, yes. And as Judge Katzen points out, with respect to Mr. Mizell, he's not even challenging... He can't even really show plain error. The defendant got... Judge Sullivan made any of these rulings before you entered into this agreement? No. And then with respect to the role argument, I really don't think there's any basis for it. The government is simply asserting, was arguing based on what was in the plea agreement, the fact that Judge Sullivan decided not to apply the role... Was he agreed on range with regard to Mizell? The agreed on range was 90 to 97 months. And he got... He got 90. And in fact... And what was Sullivan's adjusted range? 87 to 93. Okay, so he's on the high side of his adjusted range. Correct, but he still... Because Sullivan gave him a break on something else, right? Correct. When he moved things around, effectively moving offense conduct from the RICO side into the criminal history, when you move across the table, he got a break. If Your Honors have no further questions, we rest on our submissions. Thank you. I did speak with trial counsel in the case. To be sure, I never asked him, did you ever meet with the government and go over this? But he never told me at any point that I met with the government and discussed this issue. And of course, it's not within the four corners of the record. So it's unclear to me why the government would even raise that with the court. We'll see that in another proceeding. Yes, I suppose. I do note with regard to... Your Honor, had the government not breached and had Judge Sullivan not taken up their invitation to put my client in a higher category than he was ultimately placed, his range would have been 80 to 87, 81 to 87 months. And for the government to say that it's essentially harmless because my client was sentenced to 90 months, which was the bottom range of his stipulated guidelines range, is really beside the point. Because what happened was, is by virtue of the breach, Mizell was deprived of the opportunity to argue that the 3553A factors rendered the stipulated guidelines range overstated. And indeed, Judge Sullivan agreed to the extent that he thought that there was no role adjustment. So I emphasize that. And also, my adversary said that the core of the plea agreement is the stipulated guidelines range. I respectfully disagree to Mizell. And as shown by the record, the core was his ability to argue that the 3553A factors rendered the stipulated range overstated. Thank you. Thank you. Thank you all for your arguments. The court will reserve decision.